1583, 1649.   THOMPSON *v.* WALKER *et al.,* and *vice versa.*

1. It is the duty of the landlord when he rents a tenement at full price, for a term to begin in the future, to have it, on the day when the term is to begin, in a condition reasonably suited for the purposes for which it is rented, unless the circumstances surrounding the transaction are such as to indicate a contrary intention in the minds of the contracting parties.

2. A landlord leased to four persons a tenement for a period of three years, and took from them a joint covenant to redeliver the property in good condition of repair at the expiry of the lease. On the same day he executed another lease to three of the same persons that were the tenants under the first lease, for a term to begin immediately after the termination of the first lease. By reason of the failure of the tenants under the first lease to comply with their covenant to keep it in repair, the tenement was not in suitable condition on the day when the second lease was to begin. *Held*, that the tenants under the second lease could refuse to enter, and could claim a rescission of the contract; that they would not be estopped from taking this action by the fact that they were parties to the broken joint covenant made by themselves and another in the first lease; that the landlord's right of action was upon that covenant, and that in an action thereon he could recover not only the value of the repairs, but also for the damage done through the destruction of the second lease.

Complaint, from city court of Atlanta—Judge Reid. December 5, 1908.

Argued February 10,—Decided April 15, 1909.

*Westmoreland Brothers, Horton Brothers & Burress,* for plaintiff.

*E. V. Carter,* for defendants.

POWELL, J. On April 8, 1901, Thompson leased a certain tenement in the city of Atlanta, for the purpose of a livery and feed stable, to Booth, Walker, Wilson, and Harper, for the term of three years, commencing on May 1, 1901, at the price of $300 per month, payable monthly. On the same day he executed a lease to the same persons, with the exception of Booth, for the same tenement, from the date on which the first lease ended.

namely, May 1, 1904, to May 1, 1906. These leases were under seal and were signed by the landlord and the tenants. Rent notes under seal were also taken for monthly payments. In each of the leases it was provided that the tenants should keep up the repairs and should deliver the tenement back at the end of the respective terms, in the same good order and repair as when received. The notes and the leases all appear to be joint undertakings of the tenants, there being no words showing a several undertaking in any of the instruments. On May 1, 1904, at the expiry of the first lease, Walker, Wilson, and Harper, the tenants under the second lease, declined to take the tenement, on the ground that it was untenantable. When two of the rent notes became due,—those for May and June, 1904,—Thompson sued upon them. The jury found in favor of the defendants. It was issuable whether the building was untenantable on May 1, 1904, but the verdict will be taken as settling as a fact that it was untenantable. The contention of the plaintiff is, that it was the duty of the tenants to keep the premises in repair, that if the premises were untenantable on May 1, 1904, it was not his fault, but the fault of these defendants together with their joint promisor, Booth; that the present defendants, being parties to the covenant in the first lease, could not set up their failure to have the building in repair, as a reason for not taking the premises under the second lease.

The judge charged the jury, in substance, that it was the duty of the landlord to have the premises in tenantable condition on May 1, 1904; and that if he did not do so, it was not obligatory upon the defendants to enter or take possession under the second lease, and that the plaintiff could not, as against the defendants, set up the failure of the previous tenants to comply with their covenant to keep the premises in repair. If he was right in this instruction, the verdict should stand; otherwise it should be set aside. Walker, one of the present defendants, signed the note sued on, "B. F. Walker, Agt." In the lease set up in the pleadings and in the proof he is described as agent for Charles E. Walker. He attempted to plead that he is not individually bound on the contract, but that Charles E. Walker is bound. The court struck the plea. He excepted pendente lite, and has filed' a cross-bill, which is also before us for consideration.

1. In legal contemplation the two leases, being joint, and not severable or joint and severable, were separate, distinct and independent contracts; the covenant of the three defendants and another was juridically distinct from the covenant of the three alone. If the plaintiff had sued for a failure to keep the premises in repair in accordance with the covenant in the first lease, and had failed to make Booth a party to the suit, he could have excused his failure only by showing that Booth was dead, or that he could not be found and served. *Gill* v. *Mizell,* 43 *Ga.* 589; *Graham* v. *Marks,* 95 *Ga.* 38 (21 S. E. 986); *Rogers* v. *Burr,* 105 *Ga.* 432 (3,4), 446 (31 S. E. 438, 70 Am. St. R. 50). In other words, the joint liability of A and another is, as against A, a different liability from the liability of A alone, and the one can not be used as the legal equivalent of the other, though ultimately, at the end of some particular case, the practical liability may turn out to be the same. Joint promisors are not, by virtue of the relation, agents of each other; and even if they, as among themselves, are equally liable upon the promise, there is no real community of interest; for by enforced contribution each may be made to answer for his respective share. Per Lord Mansfield, in Whitcomb *v.* Whiting, Douglas, 652; *Rogers* v. *Burr,* supra.

2. On May 1, 1904, it was the duty of the landlord to have the tenement suitable for the purposes for which it had been rented, or at least as suitable as it was on the day the lease was executed; and the defendants had a right to refuse to enter under the lease, if the landlord failed in this respect. *White* v. *Montgomery,* 58 *Ga.* 204. As a means of complying with this duty on his part, he had taken a covenant from the four joint promisors,— the tenants under the lease expiring that day,—that they would leave the premises in that condition. This was an independent covenant on the part of these four joint promisors. *Lewis* v. *Chisholm,* 68 *Ga.* 40. Now if this covenant had been the covenant of the three present defendants, they would not be heard to set up, in an action by the landlord against them, that the premises were not in suitable condition; for to allow them to assume such a position would be to allow them to take advantage of their own wrong. But the wrong of these three and another as joint promisors is not the wrong of these three disassociated from the fourth man. Whatever appearance of injustice may arise from

the application of this rule is dissipated when we. look a little further into the resulting position in which the judgment in the present action places the parties. As against the present defendants, their successful assertion of the proposition that the tenement was not suitable for occupancy on May 1, 1904, creates an estoppel to deny these facts in any future suit. The landlord has his right of action against these three and the other joint promisor, upon the broken covenant in the first lease. They (at least all of them but Booth) will not be permitted, in an action upon the covenant, to say they did not fail in keeping it. *Haber-Blum-Bloch Co.* v. *Friesleben, 5 Ga. App.* 123 (62 S. E. 712). Whatever damages the landlord may have sustained by reason of the fact that the breach of this covenant caused a destruction of the first lease are recoverable in the action upon the covenant. Hence it seems to us that so far as Thompson is concerned it matters little, apart from the question of costs, whether the present judgment be affirmed or reversed. Whatever natural justice there may be in the plaintiff's contention that the defendants can not take advantage of their own wrong is preserved to him, notwithstanding the result reached by this court in the present case is that the verdict in favor of the defendants is allowed to stand. If the action had been in the superior court, equitable pleadings might have been filed, making Booth a party, and the whole matter thus might have been ended in one action; but the jurisdiction of the city court is so limited as to prevent this being done. The judgment on the main bill of exceptions will be affirmed.

We will not inquire into the merits of the cross-bill, but will dismiss it, with direction that the action of the court complained of shall not hereafter operate as a res adjudicata or an estoppel upon the parties.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed, with direction.*